## In re PITTSBURGH RYS. CO.

No. 20225.

United States District Court
W. D. Pennsylvania.

July 18, 1951.

See also, D.C., 80 F.Supp. 873.

Leo Kostman and Edward M. Citron, of Pittsburgh, Pa., for petitioners Mike Medve, Vincent Survinski, and Paul J. Hudak, trading as Memory Lane Amusements.

Samuel L. Fuss, of Pittsburgh, Pa., for the trustee, Elmer E. Bauer.

BURNS, District Judge.

Pittsburgh Railways Company ("Railways"), at all times pertinent hereto, was owner of a property located at 2401 Ardmore Boulevard in Forest Hills Borough, Allegheny County, Pennsylvania. Lessee of that property in October, 1946, was petitioner Hudak, who was operating a roller-skating rink on the premises. The property was one of fifty-eight parcels of real estate, the sale of which in bulk was approved by this Court on July 6, 1950.

On November 4, 1946, Hudak entered into a two-year lease, at a rental of $150.00 per month, in which lease the Railways trustees reserved the right of cancellation ninety days after written notice.

Thereafter, in a letter dated October 1, 1947, Hudak asked for "at least a 10 year lease". He stated that he had made numerous improvements and all repairs, and that he wanted "to invest at least ($22,500) [sic] to enlarge the building * * *." This letter also noted that a George Brown, at that time an employee of the Railways, would be his partner in the business.

As a result of the ensuing negotiations, the trustees gave a five-year lease on the property, at $160.00 per month, to Hudak, Brown, and petitioner Medve. Signed on December 22, 1947, the lease was to begin on January 1, 1948. By this time, Brown was no longer a Railways employee.

By special typed provisions of the lease (a) the aforementioned tenants were required to make all repairs, alterations, and improvements at their own expense, (b) the tenants covenanted "to expend approximately $22,500 on additions and improvements to" the building, which change included the installation of a concrete, bituminous, or maple floor, and (c) the lease was subject to cancellation upon termination of the trustees' right to possession or upon termination of the reorganization proceedings.

On February 4, 1949, Hudak and Medve entered into a partnership agreement with petitioner Survinski. The agreement does not indicate what happened to Brown, who apparently withdrew from the enterprise at some time prior thereto.

Petitioners in fact spent an amount greater than $22,500.00 in alterations and additions. The petition alleges that $62,805.31 was spent. The proof introduced, however, reveals that $18,000.00 was spent by petitioners to replace a concrete floor, which had proved unsatisfactory, by a maple floor; that petitioners' figure includes a $5,000.00 fee to Hudak "for acting as general overseer and foreman for the whole job"; and that between $10,700.00 and $11,800.00 was spent on improvements and changes for which the lease made no provision. Deducting these amounts from the $62,805.31 claimed as expenditures by petitioners, I find that petitioners disbursed only about $6,000.00 more than the sum specified in the lease for the improvements therein noted.

It would be sufficient to note that, particularly in view of the rising cost of living during that period—a fact of which this Court may take judicial notice—the $6,000.00 differential would not be so great as to induce the conclusion that more than

"approximately $22,500 on additions and improvements" specified in the lease was spent. In this case, however, I may go further. All evidence indicates that the clause in the lease which called for the expenditure was not intended, by either contracting party, to convey the implication that the lessor would reimburse the lessee for expenditures beyond that amount. In fact, it would appear that the phrase "approximately $22,500", as used in the lease, was given scant consideration by the parties and that the difference in connotation between that phrase and "at least ($22,500)" in Hudak's October 1, 1947, letter was not noticed. The trustees, naturally, were pleased to have the property improved; but they never undertook to have such done at any expense to the Railways. Petitioners took the risk that the expenditures—doubtless a substantial sum for them—would prove to be a wise investment with the passing of time; but, unfortunately for them, the reorganization of the Railways thereafter gained impetus and the premises here in question were sold.

This Court, exercising jurisdiction over the reorganization proceedings and consequently over the petition at bar, has looked into the facts herein alleged with particular care. It was to eliminate any possibility of inequity to petitioners that I reserved decision upon the motion for summary judgment made by the Railways trustee and ordered a hearing on the facts alleged. Cf. Reynolds Metals Co. v. Metals Disintegrating Co., 3 Cir., 1949, 176 F.2d 90, 91.

The hearing has disclosed that no material question of fact exists in the case *sub judice*. The trustees never agreed to reimburse petitioners for any expenditures beyond the sum noted in the lease, nor did the trustees even investigate to ascertain whether the specified sum would be sufficient. Petitioners never sought reimbursement or reformation of the lease until after the trustees sought approval of the sale of this property. The trustees sold the property subject to the express condition that petitioners be permitted to continue in possession under their five-year lease until it expired. Petitioners are receiving exactly what they bargained to receive; the pre-requisites for rescission or restitution are not here present. Petitioners have a persuasive basis for requesting special consideration of the purchaser of the premises; and I am sure that the trustees of the Railways would join in any such application by petitioners; but the facts preclude any legal right to recovery from the Railways. See Restatement of the Law, Restitution, 1937 ed., sec. 107 and sec. 112.